Good morning, Your Honors. May it please the Court, Tomas Margain for the petitioners. I want to begin by addressing the Busker v. Webtec case as Your Honors cited to us late last week. I read that case. I think the issues are similar. I would argue that this case has broader implications. As I will address in my argument, this is not a case where the Williams case and the standard derived from the material supplier exemption can just be applied. This is a really area where there is no California appellate court authority. The state of California does have its official position that travel time is covered. But I do think looking at, it is a question of great importance, comedy between the federal court and the state, looking at the Klein and the Kilby case, cited in the Busker case, that it would be appropriate to send it to certify the question to the California Supreme Court. I do want to move on. Counsel, before we do that, I know you would like us to certify. I guess here's my question. I view this case as being a close legal question under California law. But what is absolutely clear to me is, where's the proof? Whichever standard you adopt, I mean, the contract's not even in there. How can anybody make a determination? If you assume the best case for you, how did you prove it? The procedural issue in this case is we moved for partial summary judgment prior to the close of discovery cutoff, prior to the close of the expert. We actually were mediating the case when the district court's decision came out. So had the district court said, you know what, the record before us, we don't have any contracts, we don't have any argument about whether the milling machines could have been left on staging areas or the side of the rooms, the record is devoid of that because we brought a partial summary judgment motion early on in the litigation. But it was cross, so it was, I appreciate that and I would submit to the court that it would have given us enough time if the district court said, you know, start over, this is not, the record is not developed enough. I want, that, that may be, but the reality is, you know, this is a close question, as you know, we've got, we've got some federal concomitants of that that take one position, you've got state laws, you've got some close questions, you've got some cases. They're not exactly on point. But what, in order to prove any of them, you have to know what the agreement was. What, what, what did the parties agree to do? And I, I've, searches, I don't find it. I, if I were the district judge, I'd say, well, what, what do they agree upon? And without that, how can I possibly know whether the, you need to have this particular standard for compensation? And if that had been the district court's decision, we would have had enough time to complete disco, fact discovery and put that clearly out in the outpost. I, I understand it. Judges don't really like multiple motions for summary judgment. But I would ask exactly what was, I'm not sure that I agree in terms of a contract or what we would need here. I mean, the given, it's a given you had to have this machine, this milling machine. I mean, that's just, you couldn't do the work without it. Correct. So, then you just get a question of if the workers who are actually doing the grinding up of this, of these roadways are the same workers who are bringing the machines to the work. Then, I guess, it does seem to me that probably it's defined. I am not sure how. I, I think I could address it this way. The, the, the labor code defines the party to the contract. It's in the execution of the contract. It's clear that Granite and FMG were the parties to the contract. I appreciate the contract is not on the record.  So, it talks about, and the cases that are developed have to do with the hauling of soil and aggregates because there's more of that than, say, lumber. But those are cases that someone is not a party to the contract, would never fall under public work coverage, but for the acts in the delivery. And that's the integrated aspect case. So, Williams, the problem is, in order to get to coverage, you have to show integrated, the integrated aspect. Here- In this case, it's different from what- It's different because we're talking about the general contractor who entered into the contract. And that's why Williams is a great analytical tool to, has a dictionary definition of what in the execution is. I would submit that perhaps the simplest test would be that it's directly in the execution of the contract. But if you just use that, how would you exclude things like, and I've just kind of listed a few things down, tools, portable toilets, generations, portable water, lumber, asphalt, steel, cranes and so on. Why wouldn't that apply just as well? Very simple. If I hire a company to deliver that, that's all they do. They're not my employees. I contact Ahern or even Home Depot, not that I don't believe they do, and they just drop it off. What about the crane? What if they operate the crane? What if they operate the generator? Well, that's where you look, and the California Public Works jurisprudence is very well developed. And that's where you look at the travel and subsistence sections. The clearest example, Your Honor, is traffic control labors. They have to break all of these cones, all of these barricades, all of these lights. The traffic control travel and subsistence determination is found in the record at 98 to 119, and at the record at page 115, it specifically says there are two routes for traffic, well, there's two major routes, the various on-the-field routes for traffic control, depending on their experience and what they're doing, and a special travel route. So the travel and subsistence determination for a traffic control laborer has a travel rate and a rate on the job site. Both are under the prevailing wage determination, as published by the State of California. The operating engineers, their scope of work is at 24, there are several, we actually submitted three at page 242 and 253, and this is in the opening brief. It specifically says in the travel and subsistence determination, your time starts when you show up to the shop, and when you come back to the shop, if you're required to be there. No mention of a separate travel rate, therefore it defaults to the published rate. And I would just submit that the laborers, we did submit three separate laborer travel and subsistence determinations. These are your general laborers that could bring generators, water, picks, shovels, at pages 261, 283 of the record, and 291, they specifically, in what's called the concrete modification in Shotcrete, have separate travel rates. So if you want to save any of your time, it's up to you, but it's a. No, I would just submit in the next 15 seconds that it makes no sense that a laborer bringing cones to a public work job are paid a travel rate, while an operating engineer bringing the milling machine, maybe even from the same yard, would not be paid when you examine the travel and subsistence classifications. Judge Buckler, unless you have a question, I'd — Oh, I was just going to say, I think, I mean, aren't there repeated D.A.R. holdings or whatever you call them that support your view? There is the current asphalt case. Practitioners have been citing it for years. It's a dusty old administrative decision. Oh, I think we've found several. No, and there's the official policy and procedure manual. There are some opinion letters that really go into the nuance of the material man exemption. Right. That's an exception. Right. But it's only current asphalt, and it has to do with workers hauling materials employed by the contractor, and it's the same thing. Right. I've just used up all your time. Yeah. No, thank you. Unless Judge Fischer — No. Okay. Thank you, Your Honors. Thank you. We'll hear from the appellant. Good morning, Your Honors. Paul Simpson, appearing on behalf of Appellee's Defendants. I'd like to just start out by saying, and I think it's appropriate today, it is hard to see through some of the smoke screen that has been thrown out here about this issue. Pun intended, right? That's correct, Your Honor. But it's really very straightforward. This is not a Busker case. I'm happy to comment on it if the Court would like, but Judge Oreck, you know, got it right in the court below. There's clear California precedent that addresses — Actually, there isn't, really, that addresses this. Why shouldn't we send it to the California Supreme Court? Your Honor, because this case involves off-site hauling. The case involving Busker that has been — the Ninth Circuit has sent to the California Supreme Court is a different case. That involves the issue of a contract issued by a public authority for two components of work. The work is related. One involves the installation of an upgrade to a Metrolink system, Metrolink rail system, and the other contract component involves the upgrade of the onboard rail cars. And in that case, the focus is the contract that is at issue and whether the test that should be involved, the test that should be applied would be, as the Ninth Circuit stated, whether the work of the onboarding rail cars is integral to the operation of the completed project, which requires contracts and other information to be reviewed, or whether the work is integral to the completion of the field installation work. Well, I don't think we were trying to say it was exactly the same issue. It was whether this one, like that one, involved interpretation of the law, that it would be appropriate to have the California Supreme Court decide. And here it would be a question of whether the prevailing wage law applies to workers who are undeniably working on a public works project on — with respect to mobilization and travel time. Well, Your Honor, the workers are working on the public works site when they're performing the operation of the vehicles, but the workers are not working on the site when they're hauling to and from the contract. It doesn't say working on the site. That's not the way the law reads? No, that's — Your Honor, the Williams case talks about the integrated aspect of the flow of construction. And in this case, as Your Honor pointed out, there are no contracts in the record to look at. In fact, the undisputed record that was put in before the Court below noted that the contracts did not address the off-haul work, did not address scheduling. There is no evidence as to whether or not the contract addressed the time and manner of delivery of this equipment, which the Court equated to a tool. There is no evidence in the record of any contract that would suggest there are any limitations on the transport of equipment and how it was to be transported over the public roads, no designated of the type of equipment or tools to be used with regard to the grinding work on the project, no evidence of customer practice with regards to the compensation of this type of work. The Williams case didn't just deal with a material supplier hauling to the site. The Williams case also dealt with the off-haul of materials. Well, it did. I mean, because they had conceded that it made some sense to treat the off-haul as well in the same respect as bringing it to the site. But it really did deal with material, and it also did not deal with the same workers who were going to be working on the project. Well, Your Honor, but it's really quite different. In fact, there's quite a bit of language in Williams that I think supports the other side in this case. Well, Your Honor, I would disagree, and in fact, I would note for the record, as we noted in a footnote in our brief, that counsel noted that if the equipment was hauled to the site by someone other than the workers that worked on the site, that it would not be considered covered work. He conceded that during the oral argument, and it's referenced in a footnote. It's very different. I mean, maybe he conceded more than a few. Well, Your Honor, but the issue is that he did it, and changed Judge Ork's opinion from the way he was looking at it when he came into the oral argument, apparently. But here we do have the same workers who had to show up at their place of and that's when their time started. I mean, at what point would you say it when did it start then? Did it start when they turned the machine on? Did it start when they brought the machine off? What if something broke and somebody had to go get a part to replace it? I mean, does it go back and forth? No, Your Honor. There's two different issues there. One issue is whether the work is compensable time, whether it is work time for purposes of wage law. Then the second issue is whether the work that they're performing, the type of work, is subject to prevailing wage requirements. In the Sheet Metals v. Duncan case, the 2014 case involving Russ Will Mechanical, Russ Will was a subcontractor. Russ Will fabricated sheet metal parts in his shop, and Russ Will also did the installation at the job site. The focus of the Court's decision was whether the work at the fabrication shop was integrated into the flow aspect of construction. The focus wasn't on what work was done by what worker. It was the nature of the work and where that work was done. In this case the case like Kern? No, it isn't, Your Honor, because in Kern, again, which is an isolated administrative opinion, first of all, the director used the standard which has never been adopted by any court, and in fact is not the standard that's discussed in the Buster case, when the Court said whether the task or the function of the travel to the job site is related to the work to be performed there. In that instance, as the Court below noted, even the director's opinion noted that the transportation of those workers to the job site was simply incidental to the work that they would subsequently perform. In this case, we're talking about individuals that are performing two discrete functions. In one case with the transportation, they're driving heavy transport trucks, hauling this equipment or large tool to the project. When they get to the project, it's a whole different type of work that they're performing. They're now operating the equipment. And so we have two distinct types of work here as opposed to in Kern. Even if you look at Kern, for some reference, the workers were not performing any discrete type of work. It was just an incidental transportation of the job site. Counsel, let me just suggest to you, at least from my perspective, we've either got a failure-proof case which can be decided in a non-presidential opinion, or we have enough confusion, even with the Becker, that we may have to send this to the California Supreme Court. Which do you prefer? Well, Your Honor, I don't want the – I don't believe that there is sufficient – there is a sufficient basis to send it to the California Supreme Court here, is my view, because I do believe that Williams and the Sansome case, sheet metal workers versus Duncan, provides the clear standard for resolving this case where there has been no contract or contracts submitted. Well, that gets to the other point, though. Yes. My concern is I don't see how this case, based upon the state of the evidence, I don't see how this case can be resolved. The evidence that you need to decide the case, even with the law that we have, seems to me not to be there. There are so many open issues, you can't do that, so there's a failure of proof. That's what the district court decided, in effect. Is that the correct answer? Your Honor, I think on the record before the Court here, which is undisputed by both sides, I think it can be decided on narrow grounds, and Granite Rock and Fonseca McElroy would be happy with a resolution on that basis. Other questions by my colleagues? No. Okay. Thank you. We have a little more about it. You didn't really have any time. We'll let you have part of his time. Give him a minute, okay? I'm sure Mr. Simpson would concur. I think he's going to concur. Briefly, I agree with Your Honor that the district court judge could have said there are open issues and denied the assignment judgment without prejudice. I would concur at trial that could be a judgment in defendant's favors because that's the trial. Here, we still had plenty of time to do discovery. Assuming, I mean, obviously, more discovery had been done, you put more in. That's different. But based on the record we have, do you agree that there wasn't enough evidence in here for the judge to decide the case other than the way he did? No, because I think if you're the party to the contract, the Williams analysis is only relevant to what is the execution. And you can't execute the contract without any of the tools, including health and safety monitor. But you're forgiving the evidentiary issue. I get your point if you have the contract, and you know what the customs and such, but if you don't have any of that, how can you decide the case other than the way the district judge did it? Well, I think you deny without prejudice or you deny with prejudice. So basically, you'd say, well, you didn't have any evidence. You made a judgment, but why don't you give them another chance to get some evidence? But we'll put the contracts in front of us. Put industry, I can't decide what's industry standard. Again, this isn't an exemption case. The burden really isn't. The burden's on the worker to show that they did the work. The travel and subsistence shows they have been paid for that time. Isn't this really a procedural case? The evidence is not there. I wish the district court would have just denied without prejudice. I'm sure you did. But you didn't. He didn't, and here we are. Exactly. Why did you think that you should get summary judgment? Obviously, you thought it was ready for summary judgment. So why did you think that? And then you know. Looking at the travel and subsistence determinations, having experience in this area of the law, and litigating cases where laborers traveling to job sites with materials, even just themselves, even just driving a pickup truck that was going to be used, clearly under the labor's travel and subsistence with the different rates of pay, they were going to get that travel rate before it was limited to what's called the concrete modification industry. Now there's a general travel rate for laborers. Traffic control laborers on the same job site have two different rates. Their field rate and their travel rate. And so here is a situation where operating engineers local three signed a special travel rate, but decided for some reason not to give it to the state of California. So I did see an issue where they're stuck with the higher rate, frankly, because they didn't want to share the travel rate with the state and have it applied to all contractors on this, you know, very substantial and lucrative work. I would submit. Thank you, Your Honors. Thank you. Other questions by my colleagues? All right. Thank you. We thank all counsel for your argument. The case just argued is submitted. We're going to adjourn for the day, but we'll ask our law clerks to visit with our visiting students, and we will come out after we finish our conference. We stand adjourned. All right.
judges: Fisher, M. Smith, Bucklo